BOYLE ICE COMPANY OF DELAWARE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 51777, 62092, 69294, 73851.   Promulgated November 8, 1935.

*John C. Gregory, Esq.*, for the petitioner.
*E. A. Tonjes, Esq.*, for the respondent.

### OPINION.

McMAHON: These are proceedings, duly consolidated for hearing and opinion, for the redetermination of deficiencies in income tax for the years 1928, 1929, 1930, and 1931, in the respective amounts of $628.91, $595.92, $598.54, $598.54.   Each petition contains an allega-

tion that the respondent erred in determining the deficiency and each contains the allegation, in substance, that respondent erred in holding that the basis, for purposes of exhaustion, of a certain contract is the same as in the hands of the transferor, such basis as determined by the respondent being nothing, since it cost the transferor nothing, and in failing to hold that the basis of such contract is $100,000, alleged to be its cost to the petitioner. These allegations were denied by respondent.

The parties entered into the following stipulation of facts:

1. The petitioner is a corporation duly organized and incorporated under the laws of the State of Delaware on August 17, 1923.

2. Exhibit "A", attached hereto and made a part hereof, is a true and correct copy of a certain contract, involved in this proceeding, dated June 25, 1923, between the Pennsylvania Railroad Company, first party; Boyle Ice Company, a corporation organized and existing under the laws of the State of Illinois, second party; and Fruit Growers Express Company, a corporation organized and existing under the laws of the State of Delaware, third party, together with guarantee letter dated June 28, 1923, addressed jointly to the Pennsylvania Railroad Company and Fruit Growers Express Company and signed by John P. Boyle in his lifetime, which guarantee letter was duly accepted by the Pennsylvania Railroad Company and Fruit Growers Express Company.

3. Exhibit " B ", attached hereto and made a part hereof, is a true and correct copy of a certain resolution duly adopted by the Boyle Ice Company, of Delaware, the Delaware Corporation, at the first meeting of its board of directors held the 22nd day of August, 1923.

4. Exhibit " C ", attached hereto and made a part hereof, is a true and correct copy of a certain resolution duly adopted by the Boyle Ice Company, the Illinois corporation, at a special meeting of its board of directors held the 22nd day of August, 1933. [1923]

5. Exhibit " D ", attached hereto and made a part hereof, is a true and correct copy of a certain resolution duly adopted by Boyle Ice Company, the Illinois corporation, at a special meeting of its board of directors held the 20th day of September, 1923.

6. On or about September 20, 1923, pursuant to the resolutions set forth in Exhibits " B " and " D ", the Boyle Ice Co. of Delaware, the Delaware corporation, acquired from the Boyle Ice Company, the Illinois corporation, the contract referred to in paragraph 2 hereof as Exhibit "A"; and in exchange therefor, the Boyle Ice Company of Delaware, the Delaware corporation issued 7,000 shares of its common capital stock to the Boyle Ice Company, the Illinois corporation, the certificate for said shares being issued in the name of John P. Boyle, who held the stock as nominee of the Boyle Ice Company, the Illinois corporation.

7. The aforesaid 7,000 shares of stock issued to John P. Boyle as nominee of the Boyle Ice Company, the Illinois corporation, was held in this manner until January 1, 1924.

8. That of the 7,000 shares of stock issued to John P. Boyle, as aforesaid, certificates for 3,000 shares thereof were reissued on or about January 2, 1924 to Boyle Ice Company, the Illinois corporation, and certificates for the balance, to-wit, 4,000 shares, were thereafter reissued to various and sundry purchasers of 2,000 shares of preferred stock of Boyle Ice Co. of Delaware, the Delaware corporation, as a bonus in connection with their purchases of said preferred stock.

9. That of the 7,000 shares of stock issued to John P. Boyle, as aforesaid, 4,766 shares were acquired by stockholders of the Boyle Ice Company, the Illinois corporation. Boyle Ice Company of Delaware, the Delaware corporation, had an issue of 3,000 shares of preferred stock; and of this stock 1,883 shares thereof were purchased by stockholders of the Boyle Ice Company, the Illinois corporation, subsequent to January 2, 1924.

Exhibits A, B, C and D, referred to in the above stipulation, we incorporate herein fully by reference. Exhibit C authorizes John P. Boyle to subscribe, on behalf of the Illinois corporation, for 1,000 shares of preferred stock of petitioner. By Exhibit A, the Boyle Ice Co. of Illinois agreed to construct an ice plant on or before January 2, 1924, at Huntingdon, Pennsylvania, to furnish and sell ice to the express company and the railroad company. The guarantee letter, attached to the contract, provided that the rights and obligations of the Illinois corporation might be assigned to a Delaware corporation, the Illinois corporation to guarantee full performance by the Delaware corporation.

After the contract in question was executed, it was determined that the consideration to be paid for it by the new corporation, the petitioner, should be 7,000 shares of petitioner's common stock, and that 1,000 of these shares should constitute the compensation of the Boyle Ice Co., the Illinois corporation, for its services in securing the contract.

The plant was ready for operation on January 1, 1924. By January 1, 1924, Boyle had disposed of $240,000 of preferred stock. By some time in April 1924 $25,000 more preferred stock had been disposed of and the sale of the remainder of the $300,000 preferred stock was practically completed by June 1924. Of the 7,000 shares of common stock of petitioner 1,000 shares were retained by the Boyle Ice Co., the Illinois corporation, as compensation for obtaining the contract, 2,000 shares were given to such Illinois corporation in its capacity as purchaser of $100,000 of preferred stock, and 4,000 shares were distributed to a group of 56 other preferred stockholders.

On or about January 2, 1924, the petitioner sold 110 shares of common stock for $15 cash per share to three individuals. These 7,110 shares of common stock of petitioner and $300,000 par value preferred stock were all the shares of stock issued by the petitioner up to and through 1924.

At the date the petitioner was formed no money was paid in to petitioner. The contract was its sole asset. While the preferred stock of petitioner was being sold, the plant at Huntingdon was erected on the credit of John P. Boyle.

John P. Boyle's undertaking to erect an adequate icing station to be ready for use on January 1, 1924, was quite a responsibility, because if there were a failure it would mean that this potential

influence for future business or other divisional icing plants would be gone. Frederick A. Thulin, an attorney and accountant, advised Boyle that he would have to assume the responsibility of financing the preferred stock of petitioner, and that the remaining 6,000 shares of common stock of petitioner would have to remain available to be allocated for the purpose of securing $300,000 of financing.

On or about September 20, 1923, the date the petitioner acquired the contract from the Boyle Ice Co. of Illinois, such contract had a fair market value of at least $100,000. At that time the 7,000 shares of common stock which petitioner exchanged therefor had a fair market value of at least $100,000.

In each of the years in question the respondent disallowed the deduction of $5,000 claimed by the petitioner as amortization of the cost of the contract.

Upon the foregoing facts, which we find, we are called upon to determine the proper basis for the deduction of exhaustion allowances upon the contract in question in the hands of the petitioner during the years 1928 to 1931, inclusive. Petitioner contends that the basis is $100,000, which it claims was the amount of value paid by petitioner for it to the Boyle Ice Co. of Illinois or, in other words, its cost to petitioner. (See *MacCallum Gauge Co.*, 32 B. T. A. 544). Respondent now contends, in conformity with his determination, that the basis is nothing, since under the Revenue Act of 1928 the basis is the same in the petitioner's hands as it would be in the hands of Boyle Ice Co. of Illinois and that the contract cost the Boyle Ice Co. of Illinois nothing. There are set forth in the margin pertinent provisions of the Revenue Act of 1928.[1]

---

[1] SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION.

(a) *Basis for depreciation.*—The basis upon which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the same as is provided in section 113 for the purpose of determining the gain or loss upon the sale or other disposition of such property.

SEC. 113. BASIS FOR DETERMINING GAIN OR LOSS.

(a) *Property acquired after February 28, 1913.*—The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

\* \* \* \* \* \* \*

(8) SAME—CORPORATION CONTROLLED BY TRANSFEROR.—If the property was acquired after December 31, 1920, by a corporation by the issuance of its stock or securities in connection with a transaction described in section 112 (b) (5) (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money, in addition to such stock or securities), then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made;

\* \* \* \* \* \* \*

SEC. 112 (b) (5). TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and *immediately* after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange. [Emphasis supplied.]

The evidence shows that the petitioner acquired the contract in question on or about September 20, 1923, from the Boyle Ice Co. of Illinois in exchange for 7,000 shares of its common capital stock and that John P. Boyle held such stock as nominee of the Illinois corporation until January 1, 1924. In the stipulation of facts it is stated in part, " On or about September 20, 1923, * * * the Boyle Ice Co. of Delaware, * * * acquired from the Boyle Ice Company, the Illinois corporation, the contract * * *; and in exchange therefor, * * * issued 7,000 shares of the common capital stock to the Boyle Ice Company, the Illinois corporation." No other common stock was issued by the petitioner until about January 2, 1924. There is no proof that any of the preferred stock of the petitioner was outstanding *immediately* after the transfer of the contract to the petitioner.

Upon the evidence we are constrained to approve the respondent's determination. So far as the evidence shows the transaction in question comes within the provisions of section 112 (b) (5). The contract was transferred to the petitioner by the Boyle Ice Co. of Illinois solely in exchange for stock of the petitioner and, so far as the evidence shows, *immediately* after the exchange the Illinois corporation was in control of the petitioner. *Immediately* after the exchange, the Illinois corporation owned all of the 7,000 outstanding shares of common stock of petitioner. As pointed out above, we do not know that there was any outstanding preferred stock of petitioner *immediately* after the exchange. If there was, there is no evidence to show that the Illinois corporation did not own a controlling portion of it within the definition of control in section 112 (j).[2]

In our opinion it is not determinative that at or about the time of the exchange the Illinois corporation authorized its nominee, John P. Boyle, to deliver as a bonus to purchasers of preferred stock of the petitioner a portion of the common stock received by the Illinois corporation upon the exchange or that it was originally contemplated that this would be necessary. There is no evidence to show that petitioner had any agreement with the Illinois corporation that such Illinois corporation would return any of the common stock to petitioner, or that any of it would be issued for the benefit of the petitioner. The Illinois corporation had the right to do with the stock as it saw fit, so far as the evidence shows. About three months after the exchange the Illinois corporation did distribute some of such common stock as a bonus to purchasers of preferred stock of petitioner, but this was done, the evidence, particularly exhibit D, shows, because the Illinois corporation deemed it advisable for its

---

[2] (j) *Definition of control.*—As used in this section the term "control" means the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.

own benefit. There is no escape from the conclusion that *immediately* after the exchange the Illinois corporation owned more than 80 percent of the outstanding common stock of the petitioner. *Schmieg, Hungate & Kotzian, Inc.*, 27 B. T. A. 337, and *Samuel Insull, Jr.*, 32 B. T. A. 47. In the former case we stated in part:

\* \* \* The situation does not require that the original owners shall *remain* indefinitely in control after the exchange. It is only necessary that the owners of the property transferred shall be *immediately* in control of the corporation to which the transfer of property is made. *Federal Grain Corp.*, 18 B. T. A. 242.

In the latter case we stated in part:

\* \* \* Clearly, " immediately after the exchange " [early in January 1929] the transferors were in control of Insull Utility Investments, Inc., and remained in control of it until after January 18, 1929. What happened on and after that date has no bearing upon the question in issue. Our opinion in *Federal Grain Corporation*, 18 B. T. A. 242, is apposite. \* \* \*

Under the provisions of section 114 (a), the basis for the exhaustion of the contract is the same as provided in section 113 (a) (8) for the purpose of determining gain or loss, which is the basis in the hands of the transferor, the Illinois corporation. Under the general provisions of the revenue acts such basis in the hands of the transferor is the cost to the transferor. Section 202 (a) of the Revenue Act of 1921 and section 113 (a) of the Revenue Act of 1928, which are substantially the same in this respect. Such basis is not to be increased or decreased, since, under section 202 (c) (3) of the Revenue Act of 1921, which is substantially the same as section 112 (b) (5) of the Revenue Act of 1928, no gain or loss could have been recognized upon the exchange. The respondent has held that the contract cost the Illinois corporation nothing. There is no evidence to show that the contract did cost the Illinois corporation anything. Consequently, the petitioner is entitled to no deductions for exhaustion of the contract.

The evidence shows, and we have found as a fact, that at the time of the exchange the contract and the stock exchanged therefor each had a fair market value of at least $100,000. In the view we have taken this is of no consequence, but we may say in passing that in fixing such value we have taken into consideration the terms of the contract regarding the quantity of ice to be sold and the prices therefor, the cost of manufacturing the ice, the duration of the contract, estimated and actual earnings of the stock, the fact that on or about January 2, 1924, petitioner made several small sales of some of its common stock for $15 per share, under conditions substantially the same as those of September 20, 1923, and all other facts and circumstances bearing on the question of value.

*Decision will be entered for the respondent.*